UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| REYMUNDO MATA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:17-CV-192 |
| | § | |
| MAGICAL CRUISE COMPANY, | § | |
| LIMITED, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

**I.    Factual and Procedural Background**

Now before the Court is Plaintiff Reymundo Mata's Motion to Remand. (Dkt. No. 11). In this action filed in the 398th Judicial District Court, Hidalgo County, and removed here, Plaintiff seeks to recover damages for injuries allegedly sustained while working onboard the "Disney Magic" cruise ship. (Dkt. No. 1). Plaintiff's First Amended Petition, his live pleading filed in state court, alleges that on April 18, 2016, he was grinding a bolt into the metal ceiling of the ship "when he injured his left hand and body generally, due to the improperly maintained vessel, including improper tools and safety equipment, poor maintenance of the vessel, and improper training and supervision of its employees." (Dkt. No. 1-1, First Amended Petition at ¶ 4.1). Plaintiff further alleges that at the time of injury, he was a borrowed employee of Defendant Magical Cruise Company, Limited ("Magical Cruise"), or in the alternative, he was employed jointly by Magical Cruise, additional Defendant Standard Marine & Ship Repair, LLC ("Standard Marine"), and non-party "Gulf Coast Welding" ("Gulf Coast"). *Id.* at ¶¶ 4.1 n.1, 4.3.[1]

---

[1] Plaintiff's Original Petition sued Disney Cruise Vacations, Inc. ("Disney") and Standard Marine, and his First Amended Petition substituted Magical Cruise for Disney. *See* (Dkt. No. 1-1, Original and First Amended Petitions).

"[U]nder federal law contained in the 'Jones Act' (46 U.S.C. § 688) and the general maritime law of the United States of America," Plaintiff brings causes of action against both Defendants for negligence and unseaworthiness. *Id.* at ¶¶ 4.1-6.3.

Also in state court, American Interstate Insurance Company ("AIIC") filed a Petition in Intervention asserting a claim for subrogation. (Dkt. No. 1-1, Petition in Intervention). AIIC alleges that "[f]or and on account of the alleged injuries made the basis of the suit," it has paid $64,542.73 in benefits to Plaintiff under the AIIC policy providing insurance coverage to Gulf Coast[2] and its employees pursuant to the terms of the Longshore & Harbor Workers' Compensation Act ("LHWCA"). *Id.* at §§ III-VI. AIIC further alleges that it stands subrogated in law for the payments made, and asserts its lien against any damages recovered by Plaintiff in this suit. *Id.* at §§ VII-VIII.

On May 18, 2017, Magical Cruise timely removed the case to federal court, with Standard Marine's consent, on two independent grounds: (1) diversity jurisdiction, in that all parties are diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs; and (2) federal question jurisdiction, in that Plaintiff has asserted claims against both Defendants under the general maritime law of the United States. *See* (Dkt. No. 1); 28 U.S.C. §§ 1332(a), 1333, 1441, 1446. Plaintiff does not dispute that diversity of citizenship exists, but seeks remand on the grounds that his Jones Act and general maritime claims are non-removable. (Dkt. No. 6). Upon consideration of Plaintiff's Motion and the parties' responsive briefing (Dkt. Nos. 10, 11), in the light of relevant law, the Court finds that the Motion must be granted for the following reasons.

---

[2] The record indicates that "Gulf Coast Welding" to which Plaintiff's pleading refers, and "Gulf Coast Welding Contractors, LLC" referenced by AIIC's pleading, are the same entity.

II.     Plaintiff's Motion to Remand

A.      Removability of Jones Act Claims

1.      Overview of Applicable Law

Under the Jones Act, "[a] seaman injured in the course of employment...may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104.  Since the Jones Act incorporates "[l]aws of the United States regulating recovery for personal injury to...a railway employee," *id.*, it also incorporates those laws' prohibition against the removal of actions filed in state court. *Hefren v. McDermott, Inc.*, 820 F.3d 767, 769 (5th Cir. 2016) (citing 28 U.S.C. § 1445(a) ("A civil action against a railroad or its receivers or trustees, arising under [federal laws applicable to the liability of railroads], may not be removed to any district court of the United States.")).  Magical Cruise does not dispute this, but asserts that Plaintiff "fraudulently joined" the Jones Act claims to defeat removal, and that the Court should therefore disregard those claims in determining whether removal on the bases of diversity and/or federal question jurisdiction was proper.  (Dkt. No. 10).[3]

Although, as a general rule, Jones Act cases are not removable, the Fifth Circuit has recognized that a removing party "may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal.'" *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995) (quoting *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)).[4] The

---

[3] Anticipating this argument, Plaintiff's Motion submits that the Court may not consider it since Magical Cruise "did not allege fraudulent joinder of the Jones Act claim[s] or challenge Jones Act status at all in the Notice of Removal, and instead removed solely on the grounds of diversity and general maritime law." (Dkt. No. 6 at § I).  This argument ignores that Magical Cruise's fraudulent joinder argument reiterates, and does not contradict, the bases for jurisdiction asserted in the Notice of Removal.

[4] At the initial pretrial conference, the Court expressed concern that Magical Cruise's appeal to the fraudulent "joinder" doctrine presented a "*Smallwood*" issue—that is, Jones Act claims lacking merit against all defendants—but this concern is implicated only where the removing party alleges fraudulent/improper joinder of non-diverse *parties*. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc) ("[W]hen, on a motion to remand, a showing that compels a holding that

burden of persuasion on the removing party is a heavy one; to defeat remand, it must demonstrate that "as a matter of law there [is] no reasonable basis for predicting that the plaintiff might establish liability." *Id.* at 176 (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir. 1981)) (emphasis omitted). Although the Fifth Circuit has "cautioned against pretrying a case to determine removal jurisdiction," it has recognized district courts' "authority to use a summary judgment-like procedure for disposing of fraudulent pleading claims." *Id.* (citing *Miller Brewing*, 663 F.2d at 549 n.9). "Accordingly, in determining whether a plaintiff's claims are baseless, the district court must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff." *Id.* (citing cases).

**2.  Magical Cruise's Response**

Magical Cruise offers two arguments, with accompanying evidence, for why Plaintiff's Jones Act claims are fraudulently pleaded: (1) at the time of injury, Plaintiff was not a seaman entitled to relief under the Jones Act; and (2) the Section 8(i) settlement awarding Plaintiff benefits under the LHWCA precludes his Jones Act claim. (Dkt. No. 10 at §§ B, C, Exhs. 1-3). Plaintiff's reply focuses on disputing the first argument with evidence of his seaman status, and does not directly engage the second. *See* (Dkt. No. 11). However, the Court considers the latter argument the appropriate starting point for determining whether any reasonable basis exists for predicting that Plaintiff might establish liability under the Jones Act.

**a.  Preclusive Effect of Section 8(i) Settlement Agreement and Compensation Order**

"[T]he Jones Act and the LHWCA are complementary regimes that work in tandem: The Jones Act provides tort remedies to *sea*-based maritime workers, while the LHWCA provides

---

there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the [non-diverse] defendant necessarily compels the same result for the [diverse] defendant, there is no improper joinder; there is only a lawsuit lacking in merit."). A separate (albeit related) body of case law addresses the fraudulent pleading of Jones Act *claims* as a basis for disregarding the otherwise applicable prohibition against the removal of those claims.

workers' compensation to *land*-based maritime employees." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 488 (2005) (emphasis in original). In *Sharp v. Johnson Bros. Corp.,* 973 F.2d 423 (5th Cir. 1992), to which Magical Cruise appeals, the Fifth Circuit recognized that "merely accepting voluntary payments under the LHWCA without a formal award does not bar a worker from filing a Jones Act suit," both because the question of coverage has never actually been litigated and no threat of double recovery exists. *Sharp v. Johnson Bros. Corp.*, 973 F.2d 423, 425-26 (5th Cir. 1992) (citing *Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 91-92 (1991)); *see* 33 U.S.C. § 903(e) ("Notwithstanding any other provision of law, any amounts paid to an employee for the same injury [or] disability…for which benefits are claimed under [the LHWCA] pursuant to any other workers' compensation law or [the Jones Act] shall be credited against any liability imposed by [the LHWCA]."); *see* (Dkt. No. 10 at § C). However, *Sharp* held that a plaintiff's Section 8(i) settlement[5] with his employer and its compensation insurer, approved by a compensation order of the administrative law judge ("ALJ") of the Department of Labor ("DOL"), constituted just such a "formal award" and precluded a Jones Act claim against the employer. *Id.* at 426-27. This was the case even though the existence of LHWCA coverage—*i.e.*, the plaintiff's status as a harbor worker—"was never litigated in an adversarial proceeding." *Id.* at 426. The Court explained:

> [The plaintiff] availed himself of the statutory machinery to bargain for an award, and he had the full opportunity to argue for (or against) coverage. He filed a claim for LHWCA benefits, invoking the jurisdiction of the DOL. Pursuant to 33 U.S.C. § 908(i)(1), the ALJ considered Sharp's testimony, as well as the parties' stipulations and their settlement, before issuing its findings of fact and order extinguishing [the employer's and compensation insurer's] liability for LHWCA benefits.
>
> Having obtained the order of the ALJ and the aegis of the DOL to ratify and enforce his settlement, Sharp ensured that his rights were more secure under the agreement than they

---

[5] A settlement reached under Section 908(i) of the LHWCA, 33 U.S.C. § 908(i), "is commonly referred to as a Section 8(i) settlement." *Cooper v. Int'l Offshore Servs., L.L.C.*, 390 F. App'x 347, 438 n.1 (5th Cir. 2010).

> would have been if the settlement were considered merely a contract between the parties. It follows that where the ALJ issues a compensation order ratifying a settlement agreement, a "formal award" should be deemed to have been made under *Gizoni*, and the injured party no longer may bring a Jones Act suit for the same injuries.

*Id.* (internal footnote omitted). The Fifth Circuit considered its holding "consistent with the purpose of the LHWCA," which "was not designed to create a mere safety net, guaranteeing workers a minimum award as they seek greater rewards in court"; "[r]ather, it has a benefit to employers, too, giving them limited and predictable liability in exchange for their giving up their ability to defend tort actions." *Id.* "Permitting a Jones Act proceeding after a formal compensation award…would defeat the purpose of the LHWCA, as well as work unfairness, because…employers often have different insurance carriers for workers' compensation claims and tort claims, so the compensation insurer, by guaranteeing a minimum award, necessarily would reduce the ability of the tort insurer to effect a settlement." *Id.* at 427.

Magical Cruise has provided a copy of the "Agreed Settlement Pursuant to Section 8(i) of the Act and Compensation Order" dated February 16, 2017, reflecting: (1) Plaintiff's settlement with his employer, Gulf Coast, and its insurer, AIIC, for "compensation and other benefits for injuries sustained on April 18, 2016, when, while performing services as a welder on a Disney cruise ship on the High Seas, he lacerated his left thumb while using a grinder"; and (2) approval of that settlement by the District Director, Seventh Compensation Unit, DOL Office of Workers' Compensation Program. (Dkt. No. 10, Exh. 3). Under *Sharp*, the Section 8(i) Settlement Agreement and Compensation Order would preclude any Jones Act claim against Gulf Coast or AIIC. However, Plaintiff has brought Jones Act claims against different parties, under the theory that Magical Cruise and/or Standard Marine were his borrowing or joint employers. Magical Cruise's response posits that "Plaintiff may argue that *Sharp* is distinguishable because Plaintiff is not asserting a Jones Act claim against his employer or his

employer's LHWCA carrier," and that "[t]his argument is nevertheless fatal to [Plaintiff's] Jones Act claim[s] because it necessarily asserts that Plaintiff was not employed by Defendant Magical Cruise, and, therefore, necessarily asserts that he was not a crewmember (*i.e.*, seaman) of the vessel." (Dkt. No. 10 at ¶ 5.13). Plaintiff's reply does not make this argument, nor could he, as an employer-employee relationship is necessary to recovery under the Jones Act. *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980). Rather, Plaintiff highlights what *Guidry* also recognized—that a non-employer "who borrows a worker may become his employer if the borrowing employer assumes enough control over the worker," and that "this does not automatically mean that [the worker] ceases to be his immediate employer's servant for Jones Act purposes." *Id.*; *see* (Dkt. No. 11 at § II). In other words, a worker may have more than one Jones Act employer. *Guidry*, 614 F.2d at 452. Assuming that either Magical Cruise or Standard Marine may be considered an employer of Plaintiff for Jones Act purposes,[6] *Sharp* does not clearly preclude Plaintiff's Jones Act claims. Although the absence of a formal adjudication of LHWCA coverage (and therefore Plaintiff's status as a land-based maritime worker) does not prevent the Section 8(i) Settlement Agreement and Compensation Order from being considered a "formal award" against parties who eschewed the adjudication of coverage in favor of a settlement with "the aegis of the DOL," *Sharp* does not speak to whether Plaintiff is similarly estopped from claiming that he was a seaman and borrowed employee of *another* party at the time of injury. Among the requirements for collateral estoppel in the usual case are that the issue under consideration in a subsequent action "must have been fully and vigorously litigated in the

---

[6] Plaintiff's sworn declaration attached to his reply contains statements supporting certain of the factors considered by courts in determining borrowed employee status. *See, e.g., Brown v. Union Oil Co. of Ca.*, 984 F.2d 674, 676-77 (5th Cir. 1993) (setting forth nine factors, none of which is dispositive); (Dkt. No. 11, Exh. 1). Since the Court must construe all disputed facts in Plaintiff's favor, and in fact Magical Cruise's Notice of Removal and response do not directly dispute Plaintiff's status as a borrowed employee, the Court cannot find that Plaintiff has fraudulently pleaded that status as a basis for Magical Cruise's liability under the Jones Act.

7 / 13

prior action," *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994), such that "[a] consent judgment ordinarily does not give rise to issue preclusion," *Hughes v. Santa Fe Int'l Corp.*, 847 F.2d 239, 241 (5th Cir. 1988). Further, the concern underlying *Sharp*'s holding—that the settling employer's "compensation insurer, by guaranteeing a minimum award, necessarily would reduce the ability of the [employer's] tort insurer to effect a settlement"—is not present here. As the Court must resolve any ambiguity in the controlling law in Plaintiff's favor, it finds that the Section 8(i) Settlement Agreement and Compensation Order does not render Plaintiff's Jones Act claims fraudulently pleaded.

**b.     Seaman Status**

Since "Jones Act coverage is confined to seamen, those workers who face regular exposure to the perils of the sea," *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 560 (1997), Magical Cruise also asserts that Plaintiff's Jones Act claims are fraudulently pleaded because he cannot establish his status as a seaman. (Dkt. No. 10 at § B). To demonstrate that status, a plaintiff must show that: (1) his duties contribute to the function of a vessel or to the accomplishment of its mission; and (2) he has a substantial connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995).

"[S]atisfying the first prong of the test is relatively easy: the claimant need only show that he does the ship's work." *Becker v. Tidewater, Inc.*, 335 F.3d 376, 387-88 (5th Cir. 2003) (quoting *Chandris*, 515 U.S. at 368) (internal quotations and alterations omitted). Plaintiff's pleading alleges that he was injured while grinding a bolt into the metal ceiling of the Disney Magic, a cruise ship admittedly owned by Magical Cruise,[7] and that his work contributed to the ultimate mission of the vessel. (Dkt. No. 1-1, First Amended Petition at ¶¶ 4.1, 4.3). He also

---
[7] *See* (Dkt. No. 9 at ¶ 9).

offers his sworn declaration stating that he worked as a Pipefitter Welder on the Disney Magic, in which capacity he assisted the function and mission of the vessel—to accommodate passengers on cruise vacations—"by performing welding, repair, and maintenance jobs throughout the vessel[.]" (Dkt. No. 11, Exh. 1 at ¶ 6). Magical Cruise has not contested Plaintiff's ability to meet the first requirement for seaman status, and the Court finds that Plaintiff's pleading and declaration offer a reasonable basis for determining that he did the ship's work at the time of injury.

The fundamental purpose of the second prong of the test for seaman status—the substantial connection requirement—is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368. As the Supreme Court explained in *Chandris*:

> "[T]he total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Chandris*, 515 U.S. at 370 (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984)) (internal citation omitted). Plaintiff's pleading alleges that at the time of injury, he was a borrowed employee of Magical Cruise assigned to the Disney Magic, and that he "was engaged as a member of the crew…for the duration of the voyage for which the vessel was contracted." (Dkt. No. 1-1, First Amended Petition at ¶ 4.3). In arguing that Plaintiff does not meet the test for seaman status, Magical Cruise relies on the sworn declaration of its Manager of Technical

Operations, Alan Wilson, who attests that Plaintiff was a shore-based employee of Gulf Coast, a subcontractor of Standard Marine, and that during the voyage on which Plaintiff was allegedly injured, "he was performing maintenance on the vessel pursuant to a purchase order issued to Standard Marine." (Dkt. No. 10, Exh. 1). Wilson references the attached crew manifest for that voyage and notes that Plaintiff's "name is not on it." (Dkt. No. 10, Exhs. 1, 1A). Wilson also attests, with the support of attached documentation, that Plaintiff "did not stay in the crew quarters; he stayed in a guest stateroom and executed a passenger contract." (Dkt. No. 10, Exhs. 1, 1B). On the basis of this evidence, Magical Cruise takes the position that "Plaintiff was not a crewmember in the employ of Defendant Magical Cruise"; rather, he "was considered a guest upon the vessel[.]" (Dkt. No. 10 at ¶ 5.8).

The Court first notes that Magical Cruise's classification of Plaintiff as a passenger or guest of the Disney Magic does not disprove Plaintiff's status as a seaman; if it did, borrowing employers could easily sidestep Jones Act coverage through such classifications. Rather, Supreme Court precedent instructs that the Court must look to the duration of Plaintiff's connection to the Disney Magic and the nature of his activities, taken together. The latter, as attested to in Plaintiff's declaration, consisted of performing welding, repair, and maintenance jobs throughout the vessel—not activities typically undertaken by cruise ship guests. Further, Magical Cruise admits that Plaintiff performed this work while on a "voyage"—that is, while exposed to "the perils of the sea." With respect to the durational aspect of the substantial connection requirement, the Fifth Circuit has generally "declined to find seaman status where the employee spent less than 30 percent of his time aboard ship," and the Supreme Court has deemed this "an appropriate rule of thumb" which may be departed from "in appropriate cases." *Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 536 (5th Cir. 2015) (quoting *Chandris*, 414 U.S. at 367,

371). In the borrowed employee context, this Circuit has declined to adopt "a bright-line rule that courts…must always look to an employee's entire employment with his nominal employer" in applying the 30 percent test, while also declining to adopt a rule "that borrowed-employee status automatically requires courts [to] look only to his period of employment with the borrowing employer[.]" *Id.* at 538. In *Wilcox*, the Court found no genuine issue of material fact on the question of seaman status in light of evidence that the plaintiff worked for 34 different customers on 191 jobs, both offshore and onshore, while employed by his nominal employer, that he was assigned to work on the borrowing employer's vessel "for one specific project, which had a clear end date only two months after it began," and that he "could request relief and leave the vessel before the job was complete." *Id.* at 538-39. In affirming the district court's grant of summary judgment, *Wilcox* distinguished the case before it from *Roberts v. Williams-McWilliams Co.*, 648 F.2d 255 (5th Cir.1981), in which the Court held that the plaintiff was seaman with regard to his borrowing employer. *Id.* at 538. In that case, "the employee was under the complete control of the borrowing employer; he was sent to work on the vessel for an indefinite period of time and was expected to remain on the vessel until the completion of the project." *Id.* (citing *Roberts*, 648 F.2d at 262). Also, and "[i]mportantly, the employee was assigned to work for the borrowed employer on his second day of work for the nominal employer," in which case "the distinction at issue [in *Wilcox*]—entire period of employment versus period of employment with the borrowing employer—was inconsequential[.]" *Id.* (citing *Roberts*, 648 F.2d at 257-58) (emphasis omitted).

Here, the Court lacks allegations or evidence from which to determine whether *Wilcox* or *Roberts* are more closely analogous to the case at hand. Plaintiff's declaration attests that the work he performed on the Disney Magic "totaled approximately 84-96 hours per week," and that

of those hours, "only a minimal amount of time (only 20-24 hours per month) was spent working off the vessel," in which case he spent "93.65%-95.37% of [his] time working on the vessel and its mission, and doing the vessel's work." (Dkt. No. 11, Exh. 1 at ¶ 6). He also claims that Magical Cruise maintained control over all aspects of his work, deciding "when I was working, where I was working, how long I was to work, and the number of days and hours that I was allowed to work." *Id.* at ¶¶ 7-10. Absent from Plaintiff's declaration—and, in fact, the evidence submitted by both parties—is any indication of the length of Plaintiff's assignment to the Disney Magic, relative to his employment with Gulf Coast. The Court must conclude that Magical Cruise has failed to meet its burden to show that Plaintiff has no reasonable basis for claiming seaman status by virtue of his work aboard the Disney Magic. Therefore, the Court may not disregard Plaintiff's Jones Act claims in determining whether removal was proper.

B.  **Removability of General Maritime Claims**

Since Plaintiff's Jones Act claims are non-removable, the Court need not reach whether, in the absence of those claims, the Court may exercise jurisdiction over Plaintiff's general maritime claims. Under 28 U.S.C. § 1441(c), where a plaintiff files a "civil action" that includes both a non-removable Jones Act claim and "a claim arising under the Constitution, laws, or treaties of the United States (*within the meaning of section 1331* of this title)," the entire case is removable, but the court must sever and remand the Jones Act claim. 28 U.S.C. § 1441(c) (emphasis added). Magical Cruise does not appeal to § 1441(c) as a basis for removal, and in fact the statute does not permit removal and severance in this case, given that district courts' original jurisdiction over general maritime claims is conferred by 28 U.S.C. § 1333, not § 1331. *E.g.*, *Mims v. Deepwater Corrosion Servs., Inc.*, 90 F. Supp. 3d 679, 701 (S.D. Tex. 2015) ("It is well established that general maritime causes of action do not arise under the Constitution, laws,

or treaties of the United States within the meaning of section 1331, as required by [section 1441(c)]) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 378 (1959), *superseded by statute on other grounds*, 45 U.S.C. § 59). Accordingly, the Court must remand the action in its entirety.

### III. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Plaintiff's Motion to Remand is **GRANTED** and this case is **REMANDED** to the 398th Judicial District Court, Hidalgo County.

SO ORDERED this 16th day of January, 2018, at McAllen, Texas.

*/s/ Randy Crane*
Randy Crane
United States District Judge